Judge Grimke
delivered the opinion of the court:
Section 6 of the act of 1834 requires the appraiser to list and appraise the excess, over and above $200, on all houses, except the property exempted from taxation by section 2 of the act of 1831. He is also directed to appraise all buildings, and other improvements, in like manner erected upon, or affixed to any town lots, laid out on such school and college lands. The act of 1831, which is thus referred to, exempts from taxation all lots of ground set apart for school-houses, academies, and colleges, with the buildings thereon occupied for those purposes, and all lands the property of, or granted for the use of such academy, or seminary of learning; but it, at the same time, declares that the buildings, or any of them, not occupied for literary purposes, may be taxed. I do not know that there is any material difference between these *201 laws. Both agree in exempting ^certain buildings from "taxation, and both agree in rendering certain other buildings liable to taxation. The act of 1831 describes both; the act of 1834 refers for a description of one class of these buildings to the .act of 1831. It was evidently the intention of the legislature to confer an advantage upon these institutions, which are of such •unspeakable benefit to the state, and by declaring even a monopoly in this respect to countenance and sustain the monopoly of learning generally. In so doing, we have imitated the examples of ■other states, in which controversies like the present have sometimes sprung up.
Two or three cases, I believe, have grown out of the'laws exempting certain property of Harvard University from taxation. All that we have to do, is, to give a plain construction to the statute, for if, on the one band, it should be said, that a law in aid of the interests of learning should be favorably expounded, on the other, it may be replied, that wherever a special exemption, from certain duties, is contained in a statute, that the rule of liberal ^construction is not the guide.
It appears that the house on which the tax was assessed, is used •as a dwelling-house by one of the professors in Kenyon college; ■a connection with that institution is thus shown, inasmuch as he is one of the faculty ; but this is not sufficient. It is not enough that the person residing in the house is one of the teachers; it must be shown that the building is occupied for literary purposes. I acknowledge that the distinction is not very broad; and there ¿ire some distinctions so nice, that no mind would make them unless it was compelled. But this is not one of such a character. A house merely occupied as a dwelling-house, and not as a place where any of the exercises and recitations of the college are had — • a house whose size and value may solely depend on the extent of a professor’s family, not one of whom have any connection with the college, can not be said to be a building “ occupied for literary purposes,” within the meaning of the law. It is true, such houses might be used for such purposes; but then, to the same extent that they would be withdrawn from taxation, certain other buildings, which are now exempt, would be unnecessary, and would not exist. The conclusion is, that this property was by law liable to be taxed, and the demurrer is sustained. Judge Lane, being a trustee of the theological seminary, Kenyon College, did not sit in this ease.